*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONATHAN ROBERT-WILLIAM GILLIAM,

        Defendant-Appellant.

UNPUBLISHED
May 30, 2019

No. 339867
Genesee Circuit Court
LC No. 15-037874-FC

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of involuntary manslaughter, MCL 750.321,[1] operating a motor vehicle while intoxicated causing death (OWI causing death), MCL 257.625(4), unlawfully driving away an automobile (UDAA), MCL 750.413, and failing to stop at the scene of an accident resulting in serious impairment or death, MCL 257.617. The trial court sentenced defendant to concurrent prison terms of 10 to 15 years each for the manslaughter and OWI causing death convictions, two to five years for the UDAA conviction, and 40 months to 5 years for the failure-to-stop conviction. We affirm.

This case arises from defendant causing the death of Grady Gossett on the morning of June 15, 2015, in Flushing Township. The prosecution presented evidence that defendant, while intoxicated with a blood-alcohol level of at least .08 and as high as .14, erratically drove a stolen minivan at a high rate of speed and crashed into Gossett's car as Gossett was driving to work. Gossett died from injuries received in the accident. After crashing into Gossett's vehicle, defendant ran from the scene as eyewitnesses pursued him. Hours later, the police found defendant hiding in a tool shed and arrested him. During a police interview, defendant stated that he had been assaulted at a house in Flint Township earlier that evening, had stolen the minivan to escape his attackers, and, at the time of the accident, was still in the process of fleeing

---

[1] Defendant was charged with second-degree murder, MCL 750.317, and convicted of the lesser offense of involuntary manslaughter.

to avoid a further assault. The defense called witnesses who testified that defendant had been involved in an earlier fight, but the evidence revealed that the fight occurred nearly three hours before the accident and there was no evidence that anyone had chased defendant afterward.

## I. DEFENSE OF DURESS

Defendant first argues that the trial court erred by denying his request for a jury instruction on the defense of duress for the offenses of UDAA and failure to stop at the scene of an accident. We disagree. Although we review questions of law pertaining to jury instructions de novo, a trial court's decision whether an instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Id.* (citation omitted). The jury instructions "must include all the elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Id*. at 240 (citation omitted). But a trial court is not required to instruct the jury on an affirmative defense unless the defendant has produced some evidence on all elements of the defense. *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013).

In this case, defendant requested that the trial court instruct the jury on the defense of duress in accordance with M Crim JI 7.6, which provides, in relevant part:

(1) The defendant says that [he / she] is not guilty because someone else's threatening behavior made [him / her] act as [he / she] did. This is called the defense of duress.

(2) The defendant is not guilty if [he / she] committed the crime under duress. Under the law, there was duress if [four / five] things were true:

(a) One, the threatening behavior would have made a reasonable person fear death or serious bodily harm;

(b) Two, the defendant actually was afraid of death or serious bodily harm;

(c) Three, the defendant had this fear at the time [he / she] acted;

(d) Four, the defendant committed the act to avoid the threatened harm.

[(e) Five, the situation did not arise because of the defendant's fault or negligence.]

(3) In deciding whether duress made the defendant act as [he / she] did, think carefully about all the circumstances as shown by the evidence.

-2-

(4)    Think about the nature of any force or threats.    Think about the background and character of the person who made the threats or used force. Think about the defendant's situation when [he / she] committed the alleged act. Could [he / she] have avoided the harm [he / she] feared in some other way than by committing the act?  Think about how reasonable these other means would have seemed to a person in the defendant's situation at the time of the alleged act. [Footnotes omitted.]

We conclude that the trial court's decision to deny the requested instruction for the offenses of UDAA and failure to stop at the scene of an accident did not fall outside the range of reasonable and principled outcomes.  See *Armstrong*, 305 Mich App at 239.  To establish the defense of duress, the threat compelling the defendant's conduct must be "present, imminent, and impending[.]"  *People v Henderson*, 306 Mich App 1, 5; 854 NW2d 234 (2014) (citation omitted).  Here, defendant contended that he had been in a fight and believed that his assailants were chasing him to further assault him, which caused him to steal a vehicle and later flee the scene of the car accident.  Although defendant submitted evidence of his belief that he was in imminent danger, there was no evidence of an actual threat.

Defendant's mere unsupported belief that he was being chased was insufficient to support a duress defense.  As the trial court observed, the evidence showed that defendant was not being chased.  Witnesses who observed defendant's conduct did not see anyone pursuing defendant on the road before the accident or when he fled the scene after the accident, and witnesses who were present at the earlier fight testified that no one followed defendant when he walked away. Further, as the trial court noted, the fight occurred in Flint Township, but the minivan was stolen in Flushing Township and the accident occurred in Flushing Township, both events therefore occurring a considerable distance from the location of the fight.  The fight also happened more than 2-1/2 hours before defendant stole the minivan and recklessly crashed into Gossett's car. Given the distance between the fight and the location of the offenses, the time interval between them, and the absence of any evidence showing the presence of an actual threat to defendant's safety at the time the minivan was stolen or when defendant left the accident scene, there was no basis for the trial court to instruct the jury on the defense of duress.  Accordingly, the trial court did not abuse its discretion by denying defendant's request for the instruction.

## II.  SENTENCING

Defendant also argues that he is entitled to be resentenced because the trial court imposed sentences for the involuntary manslaughter and OWI causing death convictions that are unreasonable.  We disagree.

The trial court exceeded defendant's minimum sentencing guidelines range of 50 to 100 months for manslaughter when it sentenced defendant to 10 to 15 years' imprisonment for the manslaughter and OWI causing death convictions.  In *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), our Supreme Court held that a court may exercise its discretion to depart from the applicable guidelines range.  This Court reviews a sentence imposed by the trial court for reasonableness, and we will require resentencing when we determine a sentence to be unreasonable.  *Id.*  When reviewing a sentence that departs from the sentencing guidelines for reasonableness, we review "whether the trial court abused its discretion by violating the

'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017); see also *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017).

Although the sentencing guidelines are only advisory, *Lockridge*, 498 Mich at 365, they remain highly relevant and a trial court is required to consider them when imposing a sentence. *Steanhouse*, 500 Mich at 474-475. But the key test is whether the sentence is proportionate, not whether it adheres to the range recommended by the guidelines. *Id*. "Factors that may be considered by a trial court under the proportionality standard include, but are not limited to (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (citation omitted). A departure sentence is appropriate when the guidelines do not adequately account for "important factors legitimately considered at sentencing." *Milbourn*, 435 Mich at 657. Thus, it is appropriate to compare the trial court's stated reasons for exceeding the guidelines with the trial court's scoring of the guidelines to determine whether the court's stated reasons were already accounted for in the guidelines.

The trial court's 10-year minimum sentence in this case does not constitute an abuse of discretion. At sentencing, the trial court provided a lengthy explanation for why its 20-month upward departure was proportionate. In particular, the court reasoned that the guidelines did not adequately account for the seriousness of the offense, including defendant's choices in the three hours leading up to Gossett's death. Although defendant argues that his prior conduct had no bearing on the conduct that caused Gossett's death, evidence of his prior conduct was presented at trial. Defendant explained his actions by claiming that he was fleeing assailants. The fight, however, occurred more than 2-1/2 hours before the accident, and there was no evidence that anyone was chasing him when he crashed the stolen minivan into Gossett's car, causing his death. The trial court also observed that although the guidelines accounted for defendant's criminal history, they did not adequately reflect the continuing link between defendant's alcohol consumption and commission of criminal offenses, which in this case resulted in a person's death. The trial court's reasons demonstrate that defendant's 10-year minimum sentence qualifies as proportionate under *Milbourn*, and thus is reasonable under *Lockridge*.

Affirmed.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola